Steven L. Weinstein (# 67975)
steveattorney@comcast.net
P.O. Box 27414
Oakland, Ca 94602
5101 Crockett Place
Oakland, Ca 94602
Telephone: (510) 336-2181
Facsimile: (510) 336-2181
Attorney for Plaintiffs and the alleged Classes
*Additional attorneys for Plaintiffs on signature page*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| DAVID VAN ELZEN and RONALD RODRIGUEZ, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| TAX GROUP CENTER, INC., a California corporation, | |
| Defendant. | |

## CLASS ACTION COMPLAINT

Plaintiff David Van Elzen ("Van Elzen") and Plaintiff Ronald Rodriguez ("Rodriguez") (collectively "Plaintiffs") bring this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Tax Group Center, Inc. ("Tax Group" or "Defendant") to: (1) stop Defendant's practice of placing calls using an automatic telephone dialing system ("ATDS") and/or using an artificial or prerecorded voice to the cellular telephones of consumers nationwide without their

prior express consent, (2) stop unsolicited calls to consumers who are registered on the Do Not Call Registry, (3) enjoin Defendant from continuing to place pre-recorded telephone calls to consumers who did not provide their prior written express consent to receive them or who are registered on the do not call registry, and (4) obtain redress for all persons injured by its conduct. Plaintiffs, for their Complaint, alleges as follows upon personal knowledge as to themselves and their own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## PARTIES

1.      Plaintiff Dave Van Elzen is a natural person and a resident of the State of Wisconsin, in the City of Appleton, Outagamie County.

2.      Plaintiff Ronald Rodriguez is a natural person and a resident of the State of Texas, in the City Lytle, Bexar County.

3.      Defendant Tax Group Center, Inc. is a company incorporated and existing under the laws of the State of California. Its headquarters is located One Market, Spear Tower, 36th floor, San Francisco, California 94105. Defendant does business throughout the United States, including in the State of California and in this District.[1]

## JURISDICTION & VENUE

4.      This Court has federal subject matter jurisdiction under 28 U.S.C. §1331 as the action arises under the Telephone Consumer Protection Act, 47 U.S.C § 227 *et seq.*, which is a Federal statute.

5.      The Court has personal jurisdiction over Defendant and venue is proper in this District because Defendant is registered to do business in the State of California, is headquartered in this District, and regularly conducts business in the

---

[1] Defendant filed a Statement of Information with the California Secretary of State on October 29, 2015.

State of California and in this District.

6.    Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant resides in this District, conducts a significant amount of business within this District, and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

## COMMON ALLEGATIONS OF FACT

7.    Defendant Tax Group is a company that specializes in providing debt-relief solutions for consumers who are significantly indebted to the Internal Revenue Service (IRS).[2]

8.    Unfortunately for consumers, Defendant casts its marketing net too wide. That is, in an attempt to promote Defendant's IRS debt-relief services, Defendant conducted (and continues to conduct) a wide-scale telemarketing campaign that features the making of repeated unsolicited prerecorded telephone calls to consumers' cellular telephones without consent, and even those who have registered their number on the National Do Not Call Registry - all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* ("TCPA").

9.    As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or prerecorded telemarketing calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

10.    Yet in violation of this rule, Defendant fails to obtain any prior express written consent to make these autodialed calls using a prerecorded voice to cellular telephone numbers.

---

[2] http://www.linkedin.com/company/tax-group-center-inc-

11.     In an attempt to solicit its services, namely its IRS debt-relief services, Defendant utilizes an "automatic telephone dialing system" ("ATDS") to contact or attempt to contact prospective consumers.

12.     Defendant's employees make hundreds of calls per day, a signal that an autodialer is being used. As noted by Defendant in an advertisement for employment:

> Daily responsibilities include, but not limited to: Working Monday -- Friday 40 hours a week, *make around 125 outbound calls daily*, daily call log report.[3] (Emphasis added - See the screenshot produced below).

**Dialer/Sales**
Tax Group Center - Calabasas, CA
$12 an hour
We are a rapidly growing company that is seeking 1-2 qualified people to make outbound calls for our sales team. and we are not a call center. This is a Full time hourly pay position with potential to grow.

What we desire in a candidate is: self motivation, a customer service attitude, integrity, a willingness to learn, and exceptional people skills. Applicant must be familiar with basic user end of MS office (email, word, excel)

Daily responsibilities include, but not limited to: Working Monday -- Friday 40 hours a week, make around 125 outbound calls daily, daily call log report.

13.     Furthermore, as evidenced by the screenshot produced below, a former employee for Defendant reveals that he or she was required to place approximately 250 calls per day and keep a daily log report.[4]

**Enrolled Agent / Resolution Manager**
Tax Group Center, Inc.
February 2011 – February 2014 (3 years 1 month)  |  Calabasas, CA

-Dialer (250+ dials/day)
-Case Assistant (Preparing forms, client phone calls, case management)
-Enrolled Agent/Power of Attorney (400+case management for IRS/State tax resolution programs)
-- 99 client taxpayers with OIC's accepted in 2013 for savings of over 3 million dollars.
-Resolution Manager (observe all employee productivity and efficiency, complex account resolution)

14.     Defendant calls consumers on their cellular telephones using an ATDS without their prior written express consent in violation of the TCPA.

---

[3] http://www.indeed.com/job/dialersales-dd0f4da87f9125a4

[4] http://www.linkedin.com/in/jonathan-mccormick-91106768

15.     Defendant fails to obtain any prior express written consent to make the prerecorded calls described herein to cellular telephone numbers.

16.     Consumer complaints about Defendant's invasive and repetitive calls are legion. As a sample, consumers have complained as follows:

- "Called this afternoon on my cell I am on the DNC and use my landline for IRS d also ng which I am D along with now from my sister who passed away jerks not the IRS nothing to do with the IRS."[5]

- "I pressed 3 to stop the calls but they keep calling.  Sometimes the# changes by one digit, but it's still them.  I updated my # on the do not call list last month and it seems like they call even more than before."[6]

- "The Robocall said that I qualify for IRS Tax relief program. Scaaammmm alert"[7]

- "Urgent message! Our records indicate you are eligible for IRS Tax Debt Relief!! - BLOCKED"[8]

- "Woke us up at 0730 with their robo-promise to help us with our taxes.  We'll keep getting these criminal calls until the criminals in Wash. DC put some jail time and manpower behind nailing the phone crooks. Probably won't happen in our lifetimes …"[9]

17.     In placing the calls that form the basis of this Complaint, Defendant, or its affiliated entities, utilized an ATDS in violation of the TCPA. Specifically, the hardware and software used by Defendant has the capacity to generate and store random numbers, and/or receive and store lists of telephone numbers, and to dial

---

[5] http://800notes.com/Phone.aspx/1-203-242-8296
[6] http://800notes.com/Phone.aspx/1-203-242-8296/2
[7] *Id.*
[8] http://800notes.com/Phone.aspx/1-203-242-8296/2
[9] *Id.*

such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment also is, or includes features substantially similar to, a predictive dialer, meaning that it is capable of making numerous phone calls simultaneously and automatically connecting answered calls to then available callers and disconnecting the rest (all without human intervention).

18.    Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

19.    To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

20.    There are numerous third party services that will additionally scrub call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[10] Indeed, one such service notes that it can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[11]

21.    When placing its calls to consumers, Defendant failed to get the prior express consent required by the TCPA of cellular telephone owners/users as required by the TCPA to make such calls.

22.    Furthermore, Defendant calls consumers who have no "established

---

[10] See e.g. http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[11] https://www.neustar.biz/services/tcpa-compliance

business relationship" with Defendant, and Defendant failed to scrub its lists to ensure that it was not placing calls to person's whose numbers were registered on the Do Not Call Registry. As a result, it called persons whose numbers were registered on the Do Not Call Registry.

23.    Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

24.    Defendant knowingly made (and continues to make) telemarketing calls to cellular telephones without the prior express consent of the call recipients. As such, Defendant not only invaded the personal privacy of Plaintiffs and other members of the putative Classes but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF VAN ELZEN

25.    On June 10, 2011, Plaintiff Van Elzen registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular telephone.

26.    More than 30 days after Plaintiff Van Elzen registered his cellular telephone number on the National Do Not Call Registry, Tax Group, either directly, or through its affiliates and agents, made a series of unsolicited telemarketing calls to Plaintiff Van Elzen. The calls came to Plaintiff Van Elzen on his cellular telephone using an artificial or prerecorded voice. The calls began in or around October 2016.

27.    Tax Group utilized telephone number 203-242-8296 to place its unsolicited prerecorded calls to Plaintiff Van Elzen.

28.    All of the prerecorded telephone calls from Tax Group were made to solicit Plaintiff Van Elzen to obtain its services in resolving tax-related problems.

29.    On at least one occasion, when Plaintiff Van Elzen answered one of Tax Group's calls, a prerecorded voice explained to him that the call was in

reference to a tax-relief program.    He was instructed to press #1 to speak to Tax Group's representative and to press #3 to be removed from Tax Group's list.

30.    At no time did Plaintiff Van Elzen consent to the receipt of pre-recorded calls to his cellular telephone from Tax Group, let alone provide prior oral or written express consent to Tax Group for such calls to be placed.

31.    By making unauthorized prerecorded telephone calls as alleged herein, Tax Group has caused consumers actual harm. In the present case, a consumer could be subjected to multiple, repeating unsolicited pre-recorded calls regardless of whether consumers consented to receiving them or not. Tax Group caused Van Elzen and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls and a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Van Elzen's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Tax Group also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and in certain cases appropriating cellular minutes, in addition to the invasion of privacy and nuisance of having to answer such unsolicited calls.

32.    To redress these injuries, Plaintiff brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls to cellular telephones.

33.    On behalf of the Classes, Plaintiff also seek an injunction requiring Tax Group to cease all unsolicited and unauthorized prerecorded calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees to be paid from a common fund established for the benefit of the Classes.

## FACTS SPECIFIC TO PLAINTIFF RODRIGUEZ

34.     On December 19, 2004, Plaintiff Rodriguez registered his cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls on his cellular telephone.

35.     More than 30 days after Plaintiff Rodriguez registered his cellular telephone number on the National Do Not Call Registry, Tax Group, either directly, or through its affiliates and agents, made a series of unsolicited telemarketing calls to Plaintiff Rodriguez. The calls came to Plaintiff Rodriguez on his cellular telephone using an artificial or pre-recorded voice. The calls began on or around December of 2016.

36.     Tax Group utilized telephone numbers 830-212-6739, 830-266-5013, and 830-214-7637 to place its unsolicited prerecorded calls to Plaintiff Rodriguez.

37.     As an illustrative example (and not one of limitation) Tax Group contacted or attempted to contact Plaintiff Rodriguez on the following dates:

December 26, 2016 (3 calls);

December 27, 2016;

December 28, 2016;

December 29, 2016;

December 30, 2016

January 2, 2017;

January 3, 2017;

January 4, 2017;

January 5, 2017;

January 9, 2017;

January 13, 2017;

January 16, 2017; and

January 17, 2017 (3 calls).

38.     All of the prerecorded telephone calls from Tax Group were made to solicit Plaintiff Rodriguez to obtain its IRS debt-relief services.

39.     On at least one occasion, when Plaintiff Rodriguez answered one of Tax Group's calls, an automated recording explained to him that the call was in reference to a tax-relief program. He was instructed to press #1 to speak to Tax Group's representative and to press #9 to be removed from Tax Group's list. Plaintiff Rodriguez pressed #9 to be removed from Tax Group's list.

40.     In addition to pressing #9 to discontinue receiving calls—and due to Tax Group's barrage of calls—Plaintiff Rodriguez was forced to request that Tax Group stop calling him several times via voice messages left on Tax Group's message machine.

41.     At no time did Plaintiff Rodriguez consent to the receipt of prerecorded calls to his cellular telephone from Tax Group, let alone provide prior oral or written express consent to Tax Group for such calls to be placed.

42.     By making unauthorized prerecorded telephone calls after being told to stop as alleged herein, Tax Group has caused consumers actual harm. In the present case, a consumer could be subjected to multiple, repeating unsolicited prerecorded calls because Tax Group's opt-out mechanism does not work. Tax Group caused Plaintiff Rodriguez and the members of the Classes actual harm and cognizable legal injury. This includes the aggravation and nuisance and invasions of privacy that result from the receipt of such calls and a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Rodriguez's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Tax Group also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and in certain cases appropriating cellular minutes, in addition to the invasion of privacy and nuisance

of having to answer such unsolicited calls.

43.     To redress these injuries, Rodriguez, on behalf of himself and the Classes of similarly situated individuals alleged in this Complaint, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed calls to cellular telephones.

44.     On behalf of the Classes, Rodriguez also seek an injunction requiring Tax Group to cease all unsolicited and unauthorized prerecorded calling activities and an award of statutory damages to the class members, together with costs and reasonable attorneys' fees to be paid from a common fund established for the benefit of the Classes.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of themselves and the three classes defined as follows:

**Prerecorded No Consent Class**: All persons in the United States who from the four years prior to the date of the filing of the instant action (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and services, (4) using a prerecorded voice, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it supposedly obtained prior express consent to call the Plaintiffs.

**Prerecorded Stop Class**: All persons in the United States who from the four years prior to the date of the filing of the instant action (1) Defendant (or a third person acting on behalf of Defendant) called, (2) on the person's cellular telephone, (3) for the purpose of selling Defendant's products and services, (4) using a prerecorded voice, (4) after the person informed Defendant that s/he no longer wished to receive calls from Defendant.

**Do Not Call Registry Class**: All persons in the United States who (1) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her telephone; (2) within any 12-month period (3) where the telephone number had been listed on the National Do Not Call Registry for at least thirty days; (4) for the purpose of selling Defendant's products and services; and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiffs.

46.     The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Classes; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiffs anticipate needing to amend the class definitions following reasonable and appropriate class discovery.

47.     On information and belief, there are hundreds, if not thousands, of members of the Classes such that joinder of all members is impracticable.

48.     There are several questions of law and fact common to the claims of Plaintiffs and the other members of the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Class members that may be answered in a single stroke include but are not limited to the following:

a. whether Defendant's conduct constitutes a violation of the TCPA;

b. whether Defendant utilized an automatic telephone dialing system or pre-recorded voice to place pre-recorded calls to

members of the Classes;

c. whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct;

d. whether Defendant obtained prior express written consent to contact any class members on their cellular telephones;

e. whether Defendant systematically made multiple telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry and whether calls were made to such persons after they requested to no longer be called;

f. whether Plaintiffs and the members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendant's conduct.

49.     The factual and legal bases of Defendant's liability to Plaintiffs and to the other members of the Classes are the same, resulting in injury to the Plaintiffs and to all of the other members of the Classes, including the annoyance and aggravation associated with such pre-recorded calls as well as the loss of cellular plan minutes and temporary inability to enjoy and use their cellphones, as a result of the transmission of the pre-recorded calls alleged herein. Plaintiffs and the other members of the Classes have all suffered harm and damages as a result of Defendant's unlawful and wrongful conduct of placing pre-recorded calls. Plaintiffs' claims are typical of the claims of the members of the Classes as all members of the Classes are similarly affected by Defendant's wrongful conduct. Plaintiffs, like other members of the Classes, received unsolicited pre-recorded calls from Defendant. Plaintiffs are advancing the same claims and legal theory on behalf of themselves and all absent members of the Classes.

50.     Plaintiffs will fairly and adequately represent and protect the interests of the other members of the Classes. Plaintiffs' claims are made in a representative

capacity on behalf of the other members of the Classes. Plaintiffs have no interest antagonistic to the interests of the other members of the proposed Classes and is subject to no unique defenses. Plaintiffs have retained counsel with substantial experience in prosecuting complex litigation and class actions. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiffs nor their counsel have any interest adverse to those of the other members of the Classes.

51.    The suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendant has acted, and/or has refused to act, on grounds generally applicable to the Classes, thereby making appropriate final injunctive relief. Specifically, injunctive relief is necessary and appropriate to require Defendant to discontinue placing unsolicited and unauthorized pre-recorded calls to the public. Likewise, Defendant has acted and fails to act on grounds generally applicable to the Plaintiffs and the other members of the Classes in placing the pre-recorded calls at issue, requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes.

52.    In addition, this suit may be maintained as a class action under Federal Rule of Civil Procedure 23(b)(3) because a class action is superior to all other available methods for the fair and efficient adjudication of this controversy. Absent a class action, most members of the Classes would find the cost of litigating their claims to be prohibitive, and will have no effective remedy. The class treatment of common questions of law and fact is also superior to multiple individual actions or piecemeal litigation in that it conserves the resources of the courts and the litigants, and promotes consistency and efficiency of adjudication. The claims asserted herein are applicable to all consumers throughout the United States who received an unsolicited and unauthorized pre-recorded call from Defendant. The injury suffered

by each individual class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them. Even if the members of the Classes could afford such litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

53.    Adequate notice can be given to the members of the Classes directly using information maintained in Defendant's records or through notice by publication.

## FIRST CAUSE OF ACTION
### Telephone Consumer Protection Act
### (Violation of 47 U.S.C. § 227, *et seq.*)
### (On Behalf of Plaintiffs and the Prerecorded No Consent Class)

54.    Plaintiffs incorporate by reference the foregoing allegations as if fully set forth herein.

55.    Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiffs and the other members of the Pre-recorded No Consent Class on their cellular telephones in an effort to sell its products and services using a prerecorded voice as defined in the TCPA.

56.    Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

57.    Defendant utilized equipment that made the telephone calls to

Plaintiffs and other members of the Prerecorded No Consent Class simultaneously and without human intervention.

58.     Defendant failed to obtain any prior express written consent from Plaintiffs and other called parties that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

59.     Any consent that was supposedly obtained required Plaintiffs and the Class members to receive autodialed and prerecorded calls.

60.     Defendant also failed to obtain any prior express oral consent of the persons receiving its prerecorded telephone calls.

61.     By making unsolicited telephone calls to Plaintiffs and members of the Prerecorded No Consent Class's cellular telephones using a prerecorded voice, Defendant violated 47 U.S.C. § 227(b)(1)(B) by doing so without prior express consent as required.

62.     As a result of Defendant's unlawful conduct, Plaintiffs and the members of the Prerecorded No Consent Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular phones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

63.     Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of

1    statutory damages recoverable by Plaintiffs and the other members of the

2    Prerecorded No Consent Class.

3                        **SECOND CAUSE OF ACTION**
                    **Telephone Consumer Protection Act**
4                   **(Violation of 47 U.S.C. § 227, *et seq.*)**
         **(On Behalf of Plaintiff Rodriguez and the Prerecorded Stop Class)**
5

6        64.    Plaintiff Rodriguez incorporates by reference the foregoing allegations

7    as if fully set forth herein.

8        65.    Defendant made unsolicited and unwanted prerecorded calls to

9    telephone numbers belonging to Plaintiff Rodriguez and the other members of the

10   Prerecorded Stop Class on their cellular telephones after they had informed

11   Defendant, orally and/or through the Defendant's automated prompt system, that

12   they no longer wished to receive such calls from Defendant.

13       66.    Defendant made the telephone calls using equipment that had the

14   capacity to store or produce telephone numbers to be called using a random or

15   sequential number generator, and/or receive and store lists of phone numbers, and

16   to dial such numbers, *en masse*.

17       67.    Defendant utilized equipment that made the telephone calls to Plaintiff

18   Rodriguez and other members of the Prerecorded Stop Class simultaneously and

19   without human intervention.

20       68.    By making unsolicited telephone calls to Plaintiff Rodriguez and other

21   members of the Prerecorded Stop Class's cellular telephones using a prerecorded

22   voice after they requested to no longer receive such calls, Defendant violated 47

23   U.S.C. § 227(b)(1)(B) by doing so without prior express consent.

24       69.    As a result of Defendant's unlawful conduct, Plaintiff Rodriguez and

25   the members of the Prerecorded Stop Class suffered actual damages in the form of

26   monies paid to receive the unsolicited telephone calls on their cellular phones and,

27   under Section 227(b)(3)(B), are each entitled to, inter alia, a minimum of $500 in

28

1   damages for each such violation of the TCPA.

2        70.    Should the Court determine that Defendant's conduct was willful and

3   knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of

4   statutory damages recoverable by Plaintiff Rodriguez and the other members of the

5   Pre-recorded Stop Class.

6

7                        **THIRD CAUSE OF ACTION**
   **Telephone Consumer Protection Act**

8   **(Violation of 47 U.S.C. § 227, *et seq.*)**
   **(On Behalf of Plaintiffs and the Do Not Call Registry Class)**

9

10       71.    Plaintiffs incorporate by reference the foregoing allegations as if fully

11  set forth herein.

12       72.    47 U.S.C. § 227(c) provides that any "person who has received more

13  than one telephone call within any 12-month period by or on behalf of the same

14  entity in violation of the regulations prescribed under this subsection may" bring a

15  private action based on a violation of said regulations, which were promulgated to

16  protect telephone subscribers' privacy rights to avoid receiving telephone

17  solicitations to which they object.

18       73.    The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c),

19  provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a]

20  residential telephone subscriber who has registered his or her telephone number on

21  the national do-not-call registry of persons who do not wish to receive telephone

22  solicitations that is maintained by the federal government."

23       74.    47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are

24  applicable to any person or entity making telephone solicitations or telemarketing

25  calls to wireless telephone numbers to the extent described in the FCC's July 3,

26  2003 Report and Order, which in turn, provides as follows:

27          The Commission's rules provide that companies making telephone

28

solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.[12]

75.     47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4)  Identification of sellers and telemarketers. A person or entity

---

[12] *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd 14014 (2003) Available at https://apps.fcc.gov/edocs_public/attachmatch/FCC-03-153A1.pdf

making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

76.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to landline and wireless telephone subscribers such as Plaintiffs and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

77.     Defendant also violated 47 C.F.R. § 64.1200(d) by failing to have a written policy available on demand for dealing with do not call requests, by failing to inform or train its personnel engaged in telemarketing regarding the existence and/or use of any do not call list, by failing to internally record and honor do not call requests, and by failing to honor do not call requests within 30 days.

78.     Defendant made more than one unsolicited telephone call to Plaintiffs and other members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiffs and other

members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

79.    Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to residential and wireless telephone subscribers, such as Plaintiffs and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

80.    Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiffs and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiffs and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

81.    To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs Van Elzen and Rodriguez, on behalf of themselves and the Classes, pray for the following relief:

A.    An order certifying the Classes as defined above, appointing Plaintiff Van Elzen and Plaintiff Rodriguez as the representatives of the Classes, and appointing their counsel as Class Counsel;

B.    An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater

1    all to be paid into a common fund for the benefit of the Plaintiffs and the

2    Class Members;

3          C.      An order declaring that Defendant's actions, as set out above,

4    violate the TCPA;

5          D.      A declaratory judgment that Defendant's telephone calling

6    equipment constitutes an automatic telephone dialing system under the

7    TCPA;

8          E.      An order requiring Defendant to disgorge any ill-gotten funds

9    acquired as a result of its unlawful telephone calling practices;

10         F.      An order requiring Defendant to identify any third-party

11   involved in the pre-recorded calling as set out above, as well as the terms of

12   any contract or compensation arrangement it has with such third parties;

13         G.      An injunction requiring Defendant to cease all unsolicited pre-

14   recorded calling activities, and otherwise protecting the interests of the

15   Classes;

16         H.      An injunction prohibiting Defendant from using, or contracting

17   the use of, an automatic telephone dialing system without obtaining, and

18   maintaining records of, call recipient's prior express written consent to

19   receive calls made with such equipment;

20         I.      An injunction prohibiting Defendant from contracting with any

21   third-party for marketing purposes until it establishes and implements

22   policies and procedures for ensuring the third-party's compliance with the

23   TCPA;

24         J.      An injunction prohibiting Defendant from conducting any future

25   telemarketing activities until it has established an internal Do Not Call List as

26   required by the TCPA;

K.     An award of reasonable attorneys' fees and costs to be paid out of the common fund prayed for above; and

L.     Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiffs request a trial by jury of all claims that can be so tried.

///

///

///

///

///

///

///

///

///

///

///

1                              Respectfully submitted,

2   Dated: March 3, 2017     **DAVID VAN ELZEN and**

3                              **RONALD RODRIGUEZ**,

4                              individually, and on behalf of all others similarly situated,

5

6                              By: ___/s/Steven L. Weinstein

7                              Steven L. Weinstein (#67975)

8                              steveattorney@comcast.net
    P.O. Box 27414

9                              Oakland, Ca 94602
    5101 Crockett Place

10                             Oakland, Ca 94602
    Telephone: (510) 336-2181

11                             Facsimile: (510) 336-2181

12                             Stefan Coleman*

13                             (Law@stefancoleman.com)
    Blake J. Dugger*

14                             (blake@stefancoleman.com

15                             Law Offices of Stefan Coleman, P.A.
    201 S Biscayne Blvd., 28th Floor

16                             Miami, FL 33131

17                             Telephone: (877) 333-9427
    Facsimile: (888) 498-8946

18

19                             Steven L. Woodrow*

20                             Swoodrow@woodrowpeluso.com
    Patrick H. Peluso*

21                             ppeluso@woodrowpeluso.com

22                             Woodrow & Peluso, LLC
    3900 E Mexico Avenue, Suite 300

23                             Denver, Colorado 80210
    Tel: 720-213-0676

24                             Fax: 303-927-0809

25

26                             *Counsel for Plaintiff and the Putative Classes*

27

28                             *\*Admission pro hac vice to be sought*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28